IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


**STEPHANIE R. CASTLE,**

      **Plaintiff,**

  vs.                                  Civil Action 2:14-cv-877
                                          Judge Graham
                                          Magistrate Judge King

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**


REPORT AND RECOMMENDATION

     This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for supplemental security income. This matter is now before the Court for consideration of *Plaintiff's Statement of Errors*, Doc. No. 11 ("*Statement of Errors*"), and *Memorandum in Opposition*, Doc. No. 14 ("*Commissioner's Response*").

**I.   Background**

     Plaintiff Stephanie R. Castle filed her application for benefits on April 29, 2011, alleging that she has been disabled since March 1, 2003. *PAGEID* 186-190. The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

     An administrative hearing was held on March 19, 2013, at which plaintiff, represented by counsel, appeared and testified, as did John R.

     Finch, Ph.D., who testified as a vocational expert. *PAGEID* 92,

115-17.  In a decision dated April 11, 2013,[1] the administrative law judge concluded that plaintiff was not disabled from November 1, 1994, through the date of the administrative decision.  *PAGEID* 60-72.  That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on May 29, 2014. *PAGEID* 49-51.

Plaintiff was forty-five years of age at the time of the administrative hearing and decision.  *PAGEID* 60, 92, 96.  Plaintiff has a tenth-grade education, is able to communicate in English, and has no past relevant work.  *PAGEID* 71, 96.  Plaintiff has not engaged in substantial gainful activity since her application date, April 29, 2011.  *PAGEID* 62.

## II.  Administrative Hearing

Plaintiff has no prior relevant work experience. *PAGEID* 71. She testified at the administrative hearing that she last worked in 2001 as a self-employed candle maker, but that she quit working because of personal problems.  *PAGEID* 97.

It is her diabetes, which was diagnosed in 1996, that presents her most difficult health problems.  *PAGEID* 99.  She experiences stomach pains, and has episodes of vomiting. Her blood sugar level is not controlled with medicine.  *PAGEID* 100, 101-02, 104.  She has previously taken Dilaudid, morphine, Lantus, Novolog, Levemir and Actos.  *PAGEID* 102-04.  At the time of the hearing, she was still taking Actos.  *PAGEID* 104.  She has also taken Reglan daily, which sometimes helps to settle her stomach pain.  *PAGEID* 103.  If plaintiff stands "real long," she experiences lower back pain and swelling and

---

[1] This decision amended the original decision, issued on April 10, 2013, "and addresses the entire evidentiary record[.]"  *PAGEID* 60, 73-87.

2

numbness in her hands and feet. *PAGEID* 104.

Plaintiff also experiences migraine headaches from time to time, but not every week. *PAGEID* 106, 108. These headaches are "so bad" that they cause plaintiff to vomit. *PAGEID* 106. When she has gone to the hospital for migraines, she is given pain and anti-nausea medication. *PAGEID* 107.

Plaintiff does not have a regular treating physician because she has no insurance. *PAGEID* 105. Instead, plaintiff goes to the hospital when she is sick and gets her prescriptions on those occasions. *PAGEID* 105-06. If she runs out of prescribed medication but is not sick, she would not ordinarily go to the hospital to renew the prescription. *PAGEID* 106.

Plaintiff receives food stamps in the amount of $200.00 per month, but receives no other assistance. *PAGEID* 110. She smokes approximately one-half pack of cigarettes per day; her sister buys her cigarettes. *PAGEID* 112.

The vocational expert testified that a claimant with plaintiff's vocational profile and the residual functional capacity eventually found by the administrative law judge would be able to perform a full range of light, unskilled work. *PAGEID* 115-116. Assuming that plaintiff's testimony regarding either her headaches or stomach pain is credible and would cause her to miss one day of work per month, the vocational expert testified that such a claimant could not perform that work. *PAGEID* 116.

## III. Evidence of Record[2]

Between March 23, 2011 and April 7, 2012, plaintiff visited the

---

[2] The Court's discussion of the evidence is limited to the issues presented in plaintiff's *Statement of Errors.*

emergency room eleven times. *PAGEID* 229-30. During these visits, plaintiff complained of, *inter alia*, diabetic gastroparesis, headaches, elevated glucose, vomiting, nausea, abdominal pain and ketosis. *Id*.

Plaintiff was hospitalized for two days beginning October 25, 2011 with complaints of intractable nausea, vomiting and dehydration. *PAGEID* 381. With "aggressive hydration and insulin therapy[,]" plaintiff's ketosis resolved. *Id*. Sliding scale insulin improved plaintiff's blood sugar level. *Id*. Consultative diabetic educators "provided enough information including means of getting relatively reasonably priced medications." *Id*. It was specifically noted that plaintiff conceded "that she has some prescriptions that she has not filled yet at home however secondary to financial difficulties" and that she does not have a family physician. *Id*.

Plaintiff was hospitalized for three days beginning January 3, 2012 for complaints of abdominal pain, nausea and vomiting. *PAGEID* 336-37. The attending physician noted that "previous providers were concerned over narcotic use without being compliant with required toxicities screenings." *PAGEID* 337. Plaintiff reported that "she goes to urgent care facilities and emergency department for her home medication needed for her non-insulin dependent diabetes." *Id*. It was also noted that plaintiff has smoked one pack of cigarettes per day for more than 25 years. *PAGEID* 338. A gastric emptying study revealed only 13% emptying from the stomach after 2 hours with "significant gastroparesis." *PAGEID* 336. During her hospital stay, plaintiff's pain and nausea "improved significantly." *Id*. Plaintiff was advised to schedule a diabetic follow-up with a family doctor and

4

to check her sugars daily.  *Id*.

Plaintiff was hospitalized for five days beginning August 10, 2012, with a chief complaint of epigastric pain with persistent nausea and vomiting.  *PAGEID* 474-75.  Admission notes characterize plaintiff as a "diabetic with poor access to primary care and prescription medications," *id*., and commented that plaintiff's "pain and nausea are manageable at present with oral Dilaudid and Zofran."  *PAGEID* 474.  On discharge, plaintiff was instructed to "proceed with her basic medical coverage application and attempt to establish with a new [primary care physician] in the next couple of weeks for ongoing diabetes care."  *PAGEID* 474.

On January 6, 2013, plaintiff was again hospitalized for complaints of abdominal pain and nausea.  *PAGEID* 489.  She was treated with a modified diet, intravenous fluids, pain control, anti-emetics and a proton pump inhibitor.  *Id*.  An abdominal x-ray revealed no acute abnormality and an MRI of the abdomen revealed some nonspecific abnormality, suggesting small ascites and pleural effusion.  *Id*.  Her laboratory evaluation was unremarkable.  *Id*.  Plaintiff's condition improved with treatment.  *Id*.

Plaintiff was again hospitalized on February 7, 2013 for complaints of nausea and protracted vomiting.  *PAGEID* 509.  The attending physician noted that plaintiff "never sees a doctor on a regular basis.  She just comes to the hospital when she is ill and she gets her refills only when she is too sick and comes to the hospital."  *Id*.  Treatment included saline and Reglan, a readjusted insulin regimen and sleep. Plaintiff's condition improved and her nausea, vomiting and blood sugar level came under control.  *Id*.  Plaintiff was

advised "on the necessity of following up with family physician or diabetologist to have better control of her blood sugar[.]" *Id*. Plaintiff "understood and agreed with all this plan of care, but her challenges, she does not have any primary care physician, and she said she is still working on her SSI benefit paperwork." PAGEID 509-10.

Plaintiff was hospitalized for three days beginning February 19, 2013. *PAGEID* 530. "She states that she does not have insurance and does not have a primary care physician, and that this is why she came to the emergency department today." *Id*. Plaintiff was treated with IV fluid hydration, anti-emetics, analgesics and Reglan. *PAGEID* 527. Upon discharge, plaintiff "was counseled in depth on the need for close follow up to ensure that her symptoms do not recur. The patient was also counseled in depth about the need for strict glycemic control as well as an appropriate diet which will help prevent any more of these vital signs." *PAGEID* 528.

**IV. Administrative Decision**

The administrative law judge found that plaintiff's severe impairments consist of Type II diabetes mellitus and diabetic gastroparesis. *PAGEID* 62. The administrative law judge also found that plaintiff has a history of treatment for renal insufficiency, migraine headaches, hepatitis C, hypertension, anxiety and depression, but that these conditions are not severe within the meaning of the Social Security Act. *PAGEID* 62-66. The administrative law judge went on to find that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the residual functional capacity ("RFC") to perform the full range of light work as defined in

6

20 C.F.R. 416.967(b). *PAGEID* 66-71. The administrative law judge relied on the testimony of the vocational expert to find that plaintiff is able to perform a significant number of jobs in the national economy. *PAGEID* 71-72. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from April 29, 2011, through the date of the administrative decision. *PAGEID* 72.

**V.     Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by

7

substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

In her *Statement of Errors*, plaintiff challenges the administrative law judge's finding that she can perform a full range of light work and, by implication, that she would not miss at least one day of work per month because of her symptoms relating to her severe impairments. *Statement of Errors*, *PAGEID* 549.  Plaintiff specifically argues that the administrative law judge erred in finding that plaintiff's non-compliance suggests that her physical impairments were tolerable until the symptomatology worsened to the point where emergency treatment was required.  *Id*. Plaintiff contends that her failure to seek regular medical care reflects her poor access to primary care and prescription medications as well as her ineligibility for any type of welfare benefits other than food stamps.  *Id*.  Because she must therefore seek care at an emergency room or at a hospital, the record establishes that she would miss at least one day of work per month, a fact that, according to the vocational expert, would preclude her from working. *Id*. Plaintiff's arguments are essentially challenges to the administrative law judge's credibility determination.  "It is submitted that Ms. Castle's explanation for not have a regular treating source and being forced to . . . use the hospital and emergency room as her treating sources is supported by the evidence." *PAGEID* 550.

In evaluating a claimant's credibility, an administrative law judge should consider the objective medical evidence and the following

8

factors:

> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7, 1996 WL 374186 (July 2, 1996). The administrative law judge's credibility determination is accorded great weight and deference because of the administrative law judge's unique opportunity to observe a witness's demeanor while testifying. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citing *Gaffney v. Bowen*, 825 F.2d 98, 973 (6th Cir. 1987)). However, credibility determinations must be clearly explained. *See Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987). If the administrative law judge's credibility determinations are explained and enjoy substantial support in the record, a court is without authority to revisit those determinations. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir.

1994); *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 386–87 (6th Cir. 1978).

In the case presently before the Court, the administrative law judge evaluated plaintiff's credibility as follows:

> The undersigned finds the claimant's recent hospitalizations further evidence of [sic] her pattern of treatment noncompliance. The claimant's non-compliance would not be expected were her physical impairments and related symptoms severe with the meaning of the Regulations, and strongly suggest that these conditions were at least tolerable without the need to comply with prescribed treatment recommendations until the claimant's symptomatology worsened to the point to [sic] where emergency treatment was required. While the claimant's non-compliance is not a basis for denying her claim, it is a basis for heavily discounting her overall credibility. Due consideration was given to the claimant's non-compliance with prescribed treatment in assessing her residual functional capacity and determining that she is limited as set forth above.
>
> In addition to the general lack of objective evidence to support her subjective complaints, other considerations belie the claimant's allegations of disability. For example, there is evidence that the claimant stopped working for reasons not related to her allegedly disabling impairments. Specifically, the claimant indicated she stopped working on June 30, 2011 because of personal reasons not related to disability in her May 9, 2011 disability report (Exhibit 2E/2).
>
> The claimant's certified earnings record shows she earned just $11,513.88 for her entire lifetime (Exhibit 3D). The claimant alleges that she cannot work due to medical disability, and that the impairments that led to her disability first interfered with her ability to work on March 1, 2003 (later amended to May 4, 2011)(Exhibits 1E, 8D). Her work history, however, reflects a twenty-seven year pattern of not more than intermittent full- and part-time employment that precedes by several years her report of impairments. Furthermore, the claimant's certified earnings record shows she earned a total of $11,513.88 for her entire lifetime (Exhibit 3D). This evidence suggests that medical impairments may not be the sole reason, or even a material reason, for her current inability to

10

sustain fill-time [sic] competitive employment. Rather, it suggests that the claimant's overall lack of interest in working, unrelated to any medical condition, may more properly account for her current lack of employment. Considering the claimant's sporadic work history, the undersigned cannot reasonably infer that the claimant's current unemployment is due solely to her medical impairments.

The claimant has not always been fully compliant with treatment recommendations, as evidenced by her frequent trips to the emergency room. The claimant's non-compliance with prescription medications would not be expected, were the claimant's impairments as severe or disabling as alleged, and suggests that the claimant's alleged symptoms are tolerable without the need to follow these recommendations. As noted earlier, while the claimant has offered reasons for her noncompliance, such as financial constraints, financial problems are not always an adequate excuse [for] failure to seek regular medical treatment or follow-up (*Craig v Chater*, 943 F. Supp. 1184, 1190 (WD Mo., 1996). There is no evidence in the record that the claimant ever attempted to visit a free medical clinic or requested prescription medication assistance.

Finally, there is a pattern of conduct by the claimant consistent with drug seeking behavior, including multiple emergency department visits usually accompanied by requests for narcotic pain medication. Moreover, January 3, 2012 treatment notes show her history of opioid dependency as well as a concern by previous treating sources regarding the claimant's narcotic use, without compliance with toxicity screenings (Exhibit 4F/2). In light of the claimant's history of opioid dependency, the possibility of drug seeking behavior cannot be discounted. The claimant's drug-seeking behavior diminishes her credibility as such behavior indicates that the claimant obtained medical treatment solely to procure prescriptions for narcotic pain medication rather than for legitimate purposes and is inconsistent with her allegations of disabling symptoms attributable to her alleged impairments.

In summary, while the claimant has medically determinable impairments that could reasonably cause some symptoms and limitations, the above evidence shows that the claimant's testimony regarding the extent of such symptoms and limitations is not fully credible.  However, the claimant's complaints have not been completely dismissed, but rather, have been included in the residual functional capacity to

> the extent that they are consistent with the evidence as a whole.
>
> Nevertheless, in considering the criteria enumerated in the Regulations, Rules and case law for evaluating the claimant's subjective complaints, the claimant's testimony was not persuasive to establish an inability to perform the range of work assessed herein. The location, duration, frequency and intensity of the claimant's alleged symptoms, as well as precipitating and aggravating factors are adequately addressed and accommodated in the residual functional capacity set forth above.

*PAGEID* 70-71. The administrative law judge noted and followed the appropriate standards, performed an appropriate evaluation of the evidence, and clearly articulated the bases of his credibility determination.

Plaintiff challenges the administrative law judge's statement that plaintiff's "non-compliance would not be expected were her physical impairments and related symptoms *severe within the meaning of the Regulations.*" *PAGEID* 69 (emphasis added). However, the record, considered as a whole, suggests that the administrative law judge simply misspoke in this instance.  He had previously determined that plaintiff's Type II diabetes mellitus and diabetic gastroparesis were severe impairments. In assessing plaintiff's credibility, however, the administrative law judge also found that those severe impairments were not as severe or as disabling as plaintiff had alleged, in light of her failure to follow recommended medical treatment.  *PAGEID* 62, 70.

To the extent that plaintiff might invite this Court to construe her frequent trips to the emergency room and hospitalizations as evidence of economic constraints rather than as evidence of non-compliance, the Court declines that invitation.  It is for the administrative law judge in the first instance to evaluate the

12

evidence and to make credibility determinations. There exists substantial support in the record for the administrative law judge's finding that plaintiff's economic constraints neither explained nor justified her failure to seek regular medical treatment. *See also Sias v. Sec'y of HHS*, 861 F.2d 475, 480 (6th Cir. 1988) (finding that claimant's cigarette habit undermined claimant's credibility that he could not afford treatment); *Jennings v. Colvin*, No. 2:13-CV-246, 2015 U.S. Dist. LEXIS 156, at *4 (E.D. Tenn. Jan. 5, 2015)(same); *Caesar v. Comm'r of Soc. Sec.*, No. 1:12-cv-548, 2013 U.S. Dist. LEXIS 96928, at *45-36 (S.D. Ohio July 11, 2013) (same).  The administrative law judge devoted approximately three pages to his consideration of plaintiff's subjective complaints, *PAGEID* 68-71, and found that those complaints were not entirely credible.  The analysis and credibility determination of the administrative law judge enjoy substantial support in the record.  The Court will not – and indeed may not – revisit that credibility determination.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

Having carefully considered the entire record in this action, the Court concludes that the decision of the Commissioner is supported by substantial evidence.  It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED.**

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections

must be filed within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See*, *e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

                                  *s/Norah McCann King*
                                    Norah M<sup>c</sup>Cann King
                           United States Magistrate Judge

April 27, 2015